1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  ADVANTA-STAR AUTOMOTIVE<br>     RESEARCH CORPORATION OF<br>12   AMERICA,<br><br>13                          Plaintiff,<br>14   v.<br>15   SEARCH OPTICS, LLC; SEARCH<br>     OPTICS, USA, LLC; and SOUTH BAY<br>16   FORD, INC.,<br>17<br>                           Defendants.<br>18 | Case No.:  22-CV-1186 TWR (BLM)<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS THE FIRST<br>AMENDED COMPLAINT**<br><br>(ECF No. 26) |

19        Presently before the Court is a Motion to Dismiss the First Amended Complaint

20  Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Search Optics,

21  LLC; Search Optics, USA, LLC; and South Bay Ford, Inc. (ECF No. 26, "Mot.").  The

22  Court has also received and reviewed Plaintiff's Opposition to (ECF No. 28, "Opp'n") and

23  Defendants' Reply in Support of (ECF No. 29, "Reply") the Motion.  On April 13, 2023,

24  the Court held a Motion Hearing and took the matter under submission.  (ECF No. 32.)

25  After carefully considering the Parties' arguments, the relevant law, and the allegations in

26  the First Amended Complaint (ECF No. 18, "FAC"), the Court **GRANTS IN PART AND**

27  **DENIES IN PART** Defendants' Motion to Dismiss.

28  / / /

# BACKGROUND

## I.   Factual Allegations

According to the First Amended Complaint,[1] Plaintiff Advanta-STAR Automotive Research Corporation of America ("Advanta-STAR") "creates, publishes, and sells detailed reviews, comparisons, and other information related to automobiles and their features." (FAC ¶ 10.)  Plaintiff owns U.S. Copyright Registrations for its "automated database titled Advanta-STAR Consumer Research . . . which is generally revised and updated at least monthly" with "new text, material, and images." (FAC at 40–42 ("Ex. 4").)[2]  Plaintiff obtained these Copyright Registrations in 2018 (TX 8-76-1015) and 2019 (TX 8-760-971). (*See* Ex. 4; FAC ¶ 13.)

This dispute arises over three sets of automobile comparisons purportedly protected by Plaintiff's Copyright Registrations: (1) a comparison of the 2019 Ford Transit Connect and 2019 Nissan NV200, (FAC at 15–23 ("Ex. 1")); (2) a comparison of the 2019 GMC Terrain and the 2019 Jeep Compass, (FAC at 24–32 ("Ex. 2")); and (3) a comparison of the 2019 Jeep Compass and 2019 GMC Terrain, (FAC at 33–39 ("Ex. 3")), (collectively, the "Content").[3] (*See* FAC ¶¶ 10, 13.)  "Advanta-STAR provides the Content exclusively to licensees under paid, written license agreements." (*Id.* ¶ 11.)  Typically, Plaintiff's automobile comparisons are licensed by dealerships which use the information to help salespeople explain the differences between vehicles and to enhance website engagement through search engine optimization. (*Id.* at 12.)  When displayed on Plaintiff's and licensees' websites, the Content bears Advanta-STAR's notices of copyright. (*See, e.g., id.* ¶ 14.)

/ / /

---

[1]    Facts in a plaintiff's complaint are accepted as true for the purpose of a motion to dismiss. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

[2]    To avoid ambiguity, citations to the Parties' briefing refer to the CM/ECF pagination electronically stamped at the top of each page.

[3]    Exhibit 2 and Exhibit 3 are distinct in that the former emphasizes the strengths of the 2019 GMC Terrain while the latter emphasizes the strengths of the 2019 Jeep Compass.

Before the events giving rise to this action, Plaintiff had a pre-existing relationship with two of the three Defendants—Search Optics, LLC and Search Optics, USA, LLC (collectively, "Search Optics"). (*See generally id.* ¶¶ 15–20.) According to their Chief Administrative Officer and General Counsel, Search Optics is "a digital marketing company." (*See id.* at 60–61 ("Ex. 10").) In late 2011 or early 2012, Plaintiff "learned that Search Optics had reproduced and distributed to its customers some of Advanta-STAR's copyrighted content" without authorization. (*Id.* ¶ 15.) According to Plaintiff, Search Optics admitted to these actions and then entered into licensing agreements with Plaintiff to utilize the copyrighted material legally. (*See id.* ¶¶ 16–18.) But in late 2013, after Search Optics' license had expired for non-payment, Plaintiff again learned that Search Optics was reproducing and distributing Plaintiff's copyrighted material without authorization. (*See id.* ¶ 19.) In response, Search Optics once more admitted to the unauthorized use of Plaintiff's material and paid Plaintiff for such use but did not enter into a new license agreement. (*See id.* ¶ 20.)

Then, in late 2019, Plaintiff again discovered the unauthorized use of its automobile comparisons. (*See id.* at 21.) Specifically, Plaintiff learned that its Content had been published on websites belonging South Bay Ford, Inc. and Essig Motors.[4] (*See id.* ¶¶ 21, 26.) The Essig Motors website allegedly contained Plaintiff's copyrighted comparisons of the 2019 GMC Terrain and 2019 Jeep Compass, (*see id.* ¶ 26), while the South Bay Ford website contained the copyrighted comparison of the 2019 Ford Transit Connect and 2019 Nissan NV200, (*see id.* ¶ 21). Neither company obtained a license or authorization to use the Content, (*see id.* ¶¶ 23, 26), and neither website included Advanta-STAR's notices of copyright, (*see generally id.* at 43–45 ("Ex. 5"), 52–55 ("Ex. 8")). Upon learning of this unauthorized use, Plaintiff sent each company a demand letter in November 2019. (*See id.* ¶¶ 24, 27.)

/ / /

---

[4]    Essig Motors is not a Defendant to this action.

In response, Plaintiff received two emails from Vince Byrd, who identified himself as "the General Counsel at Search Optics."[5] (*See id.* ¶¶ 25, 28; *see also* Ex. 10.)  In those emails, sent in December 2019, Byrd explained that Essig Motors and South Bay Ford had reached out to Search Optics about Plaintiff's demand letters because some of the allegedly infringing content "may have been related to Search Optics services." (Ex. 10.)  Byrd explained that Search Optics was "investigating both allegations" and that he would "be taking the point on both fronts." (*Id.*)  In January 2020, Search Optics, Advanta-STAR, and their counsel participated in a conference call regarding the alleged infringement. (*See* FAC ¶ 29.)  Later that same month, Byrd purportedly "represented to Advanta-STAR that Search Optics had located the individual who prepared the infringing material." (*See id.*)  Byrd declined to provide further information but stated that he would investigate the matter further. (*See id.* ¶ 30.)  Despite Plaintiff's attempts to follow up, Search Optics provided no further information. (*See id.* ¶ 31.)  And by July 2020, Search Optics stopped responding to Plaintiff altogether. (*See id.*)

## II.  Procedural History

Plaintiff Advanta-STAR initiated this action against Search Optics (Search Optics, LLC and Search Optics, USA, LLC) and South Bay Ford on August 12, 2022. (*See* ECF No. 1.)  Defendants then filed a Motion to Dismiss, or Alternatively, a Motion for a More Definite Statement. (*See* ECF No. 13.)  In response, Plaintiff timely filed its First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1). (*See* ECF No. 18.)  Because the First Amended Complaint superseded the initial complaint, the Court denied Defendants' Motion as moot. (*See* ECF No. 21.)

/ / /

/ / /

/ / /

---

[5]     Byrd is also the registered agent for service of process for Search Optics USA, LLC. (*See* FAC ¶ 3.)

The operative First Amended Complaint alleges: (1) copyright infringement under 17 U.S.C. §§ 502–505[6] and (2) violation of copyright and management systems law under 17 U.S.C. §§ 1202, 1203 (the Digital Millenium Copyright Act). (*See generally* FAC.) On February 27, 2023, Defendants responded by filing a Motion to Dismiss the First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot.) Plaintiff opposed the Motion, (*see* Opp'n), and Defendants filed a reply in support of it, (*see* Reply). The Court set the Motion for a hearing, (*see* ECF No. 27), which was held on April 13, 2022, (*see* ECF No. 32). This Order now follows.

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a]

/ / /

---

[6] Plaintiff's First Amended Complaint separates the copyright infringement claim into "Count I" and "Count II." (*See* FAC at 7–8.) Substantively, the claims are identical, but the former seeks damages, costs, and attorney's fees under §§ 504 and 505 while the latter seeks injunctive relief and the impoundment and destruction of the infringing materials under §§ 502 and 503. (*Compare id.* at 7, *with id.* at 8.) In this Order, the Court analyzes Counts I and II together as a single legal claim.

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Still, "[a] district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990)).

## ANALYSIS

Through the instant Motion, Defendants seek dismissal of Plaintiff's copyright infringement claim and Digital Millenium Copyright Act ("DMCA") claim pursuant to Rule 12(b)(6). (*See generally* Mot.)

## I.    Copyright Infringement

Plaintiff's claim for copyright infringement alleges "Defendants had access to [Plaintiff's copyrighted] Content and, without authorization from Advanta-STAR, made or used infringing copies, or made unauthorized derivative use of the Content for their own financial gain." (FAC ¶ 36.)  To state a claim for copyright infringement, Advanta-STAR "must plausibly allege two things: (1) that [it] owns a valid copyright in [the Subject Work],

and (2) that [Defendants] copied protected aspects of [the Subject Work]'s expression." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019) (alterations in original) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116–17 (9th Cir. 2018), *overruled on other grounds by Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc)). "Because direct copying is difficult to prove, a plaintiff can satisfy the second element by demonstrating that (a) the defendant had access to the allegedly infringed work and (b) the two works are substantially similar in both idea and expression of that idea." *Pasillas v. McDonald's Corp*, 927 F.2d 440, 440 (citing *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989)).

As Plaintiff correctly notes, Defendants' Motion to Dismiss does not dispute the validity of Plaintiff's Copyright Registrations. (*See* Mot. at 10; Opp'n at 10; *see also* FAC ¶ 35 (claiming the Content is protected by Copyright Registrations).) Nor does it dispute that Defendants had access to Plaintiff's Content. (*See generally* Mot.) Instead, Defendants challenge only the second prong of the copyright infringement test—the claim that Defendants copied protected aspects of Plaintiff's Content. (*See generally id.* at 10–14.) Specifically, Defendants allege: (1) Plaintiff fails to specify which of the Search Optics entities committed the purported copying, (*see* Mot. at 10), and (2) after filtering out the unprotectable elements, the remaining elements of Plaintiff's Content are not substantially similar to Defendants' work as a matter of law, (*see id.* at 11).

### A. Plaintiff's Allegations Against "Search Optics"

First, Defendants contend that Plaintiff's copyright infringement claim must fail because "Plaintiff pleads no factual information but merely innuendo and insinuations that one of the Search Optics entities are responsible for the infringement." (*Id.*) According to Defendants, dismissal is appropriate because (1) the First Amended Complaint collectively refers to Search Optics, LLC and Search Optics, USA, LLC as "Search Optics" without specifying whether one or both committed the copying, (*see id.*; *see also* Reply at 5), and (2) several of Plaintiff's copyright infringement allegations against Search Optics are based

/ / /

on "information and belief," (*see* Mot. at 10–11; *see also* Reply at 5).  These features of Plaintiff's pleadings are not fatal to its copyright infringement claim.

The First Amended Complaint indeed refers to Search Optics, LLC and Search Optics, USA, LLC collectively as "Search Optics" and plausibly alleges that both entities engaged in the purported infringement.  (*See generally* FAC.)  Based on the First Amended Complaint, joint liability is plausible because the two Search Optics Defendants presented themselves to Plaintiff as a single entity.   For example, in his communications with Plaintiff, Mr. Byrd identified himself as the "General Counsel at Search Optics," without distinguishing between Search Optics, USA, LLC or Search Optics, LLC.  (*See* Ex. 10 (Byrd, including "Search Optics" and "searchoptics.com" in his signature); *see also* FAC ¶ 29 (indicating that "Search Optics" and its counsel had a conference call with Plaintiff).) The interrelatedness of Search Optics' corporate identities is underscored by the fact that both Defendants are incorporated in the same state and maintain their headquarters in the same location.  (*See id.* ¶¶ 2, 3.)  Ultimately, Defendants' decision to obscure their distinct corporate identities in their communications with Plaintiff cannot now shield them from suit.  If Defendants genuinely believe only one of the Search Optics entities engaged in the alleged wrongdoing, that is an issue which counsel may "assiduously explore through discovery devices."  *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005).

Moreover, Plaintiff's copyright infringement claim is not precluded by its reliance on two allegations based on "information and belief."  (*See* FAC ¶¶ 37–38.)  When filing a complaint, a "pleader is not required to allege facts that are 'peculiarly within [that] party's knowledge,' and allegations 'based on information and belief may suffice,' 'so long as the allegations are accompanied by a statement of facts upon which the belief is founded.'"  *See Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) (citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds by Flood v. Miller*, 35 Fed. Appx. 701, 703 n.3 (9th Cir. 2002)); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts / / /

must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss.").

Here, the "Factual Allegations" Section of the First Amended Complaint contains robust support for Plaintiff's subsequent assertion that, "[u]pon information and belief, in 2019, Search Optics made or used infringing copies or made or used unauthorized derivative use of [Plaintiff's Content]." (FAC ¶ 37; *see also id.* ¶ 38 (alleging the same)). The Factual Allegations Section asserts, for example, Search Optics had access to Plaintiff's copyrighted car comparisons, (*see id.* ¶¶ 15–20), which Plaintiff later discovered on South Bay Ford and Essig Motors' websites, (*see id.* ¶¶ 21–24; 26–27). And after contacting South Bay Ford and Essig Motors about their use of the Content, Plaintiff did not receive a response from them but rather from Search Optics' counsel. (*See id.* ¶¶ 24–25; 27–28.) In his response, Search Optics' counsel conceded that some of the content at issue "may have been related to Search Optics' services" and asserted that Search Optics was "investigating both allegations and [he would] be taking the point on both fronts." (*See* Ex. 10.) These factual allegations provide a firm basis for Plaintiff's later assertion that, based on information and belief, Search Optics made or used copies or derivatives of Plaintiff's Content.

Furthermore, Plaintiff has independently alleged that "Defendants have, without authorization from Advanta-STAR, caused infringing copies of the Content to be published online for viewing by the public, in total disregard for Advanta-STAR's rights in the copyrighted work." (*See* FAC ¶ 39.) This allegation is not based on information and belief and serves as an independent basis for Plaintiff's copyright infringement claim. (*Compare id.* ¶¶ 37–38, *with id.* ¶ 39.) In light of the foregoing, the Court declines to dismiss Plaintiff's copyright infringement claim on the basis that the First Amended Complaint regards Search Optics, LLC and Search Optics, USA, LLC as a single entity and is based in part on information and belief.

/ / /

/ / /

### B.      Copying of Protectable Elements

Defendants also contend that Plaintiff's copyright infringement claim must fail because "whatever alleged copying occurred involved exclusively unprotectible facts, ideas, short phrases, titles, and scenes-a-faire," (*see* Mot. at 13), and "similarities between th[e]se unprotectible elements—even verbatim—cannot support a claim for copyright infringement," (*see id.* at 14).  Defendants allege that after filtering out these unprotectable elements, "the remaining portions of the work[s] are not substantially similar as a matter of law."  (*See id*.)  Plaintiff, in response, asserts that "an analysis of substantial similarity is inherently factual and premature at the Rule 12(b)(6) stage" but that if the Court conducts such an analysis, it should find that "the Amended Complaint provides a sufficient basis to conclude the similarities between Advanta-STAR's vehicle comparisons and Defendants' webpages exceed the *de minimis* threshold required to defeat a Rule 12(b)(6) challenge." (Opp'n at 10–11.)

Absent evidence of direct copying, a plaintiff must establish substantial similarity between the protected aspects of their work and the defendant's work to succeed on a copyright infringement claim.  *See, e.g., Pasillas*, 927 F.2d at 440.  To analyze substantial similarity, courts conduct an extrinsic test and an intrinsic test; the extrinsic test is an objective comparison between the elements of each work and the intrinsic test is a subjective comparison between the impression that each work creates.  *See, e.g., Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F. 4th 1054, 1084 (9th Cir. 2022); *Malibu Textiles*, 922 F.3d at 952.  "There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. W. Pub. Co*., 149 F.2d 202, 203 (9th Cir. 1945); *see also Campbell v. Walt Disney Co*., 718 F. Supp. 2d 1108, 1111–12 (N.D. Cal. 2010).

Still, on a motion to dismiss, a court may only dismiss a copyright infringement claim if it fails the extrinsic test; courts may not apply the intrinsic test at the motion-to-dismiss phase.  *See Malibu Textiles*, 922 F.3d at 952.  Although courts may dismiss a claim

that fails the extrinsic test, "[t]he extrinsic test often requires [the] analytical dissection of a work and expert testimony." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *overruled on other grounds by Skidmore*, 952 F.3d 1051; *see also Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004).  Accordingly, in some instances, courts have found themselves unequipped to perform the extrinsic test before the parties are afforded discovery.  *See, e.g.*, *Lois v. Levin*, No. 2:22-cv-00926-SVW-ADS, 2022 WL 4351968, at *6 (C.D. Cal. Sept. 16, 2022); *Segal v. Segal*, No. 20-cv-1382-BAS-JLB, 2022 WL 198699, at *13 (S.D. Cal. Jan. 21, 2022).

Here, both Plaintiff's copyrighted works, (*see* Exs. 1, 2, & 3), and Defendants' allegedly infringing works, (*see* Exs. 8 & 10), are before the Court and capable of examination and comparison.  Moreover, Plaintiff has submitted a declaration from one of its research and development professionals which identifies the similarities and differences between the two sets of works by highlighting lines in Defendants' webpages which were "copied or paraphrased" from Plaintiff's Content.  (*See* Opp'n at 75–112 ("Opp'n Ex. 11").)[7]  Plaintiff also identifies several similarities in a chart within its Opposition briefing. (*See* Opp'n at 17–18.)  Based on the evidence submitted by Plaintiff and the factual nature of the works involved, the Court concludes that it can conduct the extrinsic test without expert testimony or further discovery.

"As a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 363 (1991); *see also Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 636 (9th Cir. 2008).  Accordingly, the "court must filter out and disregard

---

[7]     This declaration was not filed with the First Amended Complaint but rather with Plaintiff's Opposition to the Motion to Dismiss.  Still, Plaintiff argues the Court can consider the declaration because the information it compares—Defendants' webpages and Plaintiff's Content—were identified in and submitted with the First Amended Complaint.  (*See* Opp'n at 16 n.3 (citing cases).)  Defendants do not object to the Court's consideration of the declaration.  (*See generally* Reply; Docket.)  And insofar as the declaration highlights portions of documents submitted with the First Amended Complaint, the Court finds that consideration of the documents would not convert this Motion to Dismiss into a Motion for Summary Judgment.

the non-protectible [constituent] elements [of a work] in making its substantial similarity determination." *Cavalier v. Random House, Inc*., 297 F.3d 815, 822-23 (9th Cir. 2002); *see also Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022); *Swirsky*, 376 F.3d at 845 ("[I]t is essential to distinguish between the protected and unprotected material in a plaintiff's work.").

As a matter of law, certain elements of any given work are inherently non-protectable. For example, facts are not protectable because they cannot be "created" by a copyright author; instead, they are objective truths which exist in the public domain and can be discovered and used by anyone. *See, e.g.*, *Feist*, 499 U.S. at 360–61 (finding names, phone numbers, and addresses unprotectable facts); *Landsberg v. Scrabble Crossword Game Players, Inc*., 736 F.2d 485, 488 (9th Cir. 1984). Similarly, abstract ideas may not be protected, only specific expressions of those ideas.[8] *See, e.g.*, *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) (finding the "idea of producing a glass-in-glass jellyfish sculpture" unprotectable); *Mazer v. Stein*, 347 U.S. 201, 218 (1954). Finally, scenes-a-faire—also understood as "expressions that are standard, stock, or common to a particular subject matter"—are not protectable. *Satava*, 323 F.3d at 810 & n.3 (citing *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983)); *see also Swirsky*, 376 F.3d at 850 ("Under the scenes a faire doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright.")

Here, Defendants argue that "[s]tatements as to engine size, wheelbase measurements, fuel capacity and efficiency, types of brakes, warranty terms, cargo and towing capacity, or basic descriptions of ergonomic or safety features are not protectible and must be filtered out of the analysis." (Mot. at 14.) The Court agrees that certain information within Plaintiff's Content constitutes facts which may not be individually

---

[8]   In this case, for example, Plaintiff would not be able to claim copyright protection in the idea of comparing the engines of the 2019 GMC Terrain and 2019 Jeep Compass.

protected.  For example, Plaintiff's and South Bay Ford's comparisons of the 2019 Ford Transit Connect and 2019 Nissan NV200 both state, "The NV200 has no towing capacity." (*See* Exs. 1 & 10.)  This is an objective truth which Plaintiff discovered but did not create. *See Feist*, 499 U.S. at 345 ("To qualify for copyright protection work must be . . . independently created by the author.").

Although many individual elements of Plaintiff's content may not be protectable, "[i]t is true, of course, that a combination of unprotectable elements may qualify for copyright protection." *See Satava*, 323 F.3d at 811 (citations omitted); *see also Feist*, 499 U.S. at 345 ("[F]acts are not copyrightable; . . . . compilations of facts generally are."). Plaintiff's compilation must, however, be "original," meaning "it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345 ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.").  Plaintiff's comparisons possess the requisite degree of creativity to qualify for protection, as evidenced by the fact that two comparisons contain largely the same facts about the same vehicles—the 2019 GMC Terrain and 2019 Jeep Compass—but those facts are presented in very different ways.  (*Compare* Ex. 2, *with* Ex. 3.)  One comparison selects and presents the facts in a way that emphasizes the superiority of the GMC Terrain, (*see* Ex. 2), while the other emphasizes the superiority of the Jeep Compass, (*see* Ex. 3).  These creative choices demonstrate that Plaintiff's Content satisfies the originality requirement and is therefore a protectable factual compilation.

Still, "the copyright [protection] in a compilation is thin." *Feist*, 499 U.S. at 349–50; *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1178 (C.D. Cal. 2001), *aff'd in relevant part, dismissed in part*, 90 Fed. Appx. 496 (9th Cir. 2003), *as amended on denial of reh'g* (Mar. 9, 2004) ("[w]here a copyrighted work is composed largely of 'unprotectable' elements . . . it receives a 'thin' rather than a 'broad' scope of protection."). When a work as a whole is entitled to thin protection but the facts within it are unprotected, competitors may copy those facts, "so long as the competing work does not feature the same selection and arrangement" of those facts. *Feist*, 499 U.S. at 349–50; *id.* at 348

("Others may copy the underlying facts . . . but not the precise words used to present them."); *see also Alfred v. Walt Disney Co.*, 821 F. App'x 727, 729 (9th Cir. 2020) (finding the "original selection, coordination, and arrangement" of otherwise unprotectable information protectible).

Additionally, when a work is entitled to "thin" protection, courts typically require "virtual identity" rather than "substantial similarity" to find copyright infringement. *See, e.g.*, *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Kaseberg v. Conaco, LLC*, 260 F. Supp. 3d 1229, 1244 (S.D. Cal. 2017); *Rassamni v. Fresno Auto Spa, Inc.*, 365 F. Supp. 3d 1039, 1047 (E.D. Cal. 2019). The "virtual identity" standard requires "verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." *Landsberg*, 736 F.2d at 488. Thus, when a thinly protected work and an allegedly infringing work are both before the court on a motion to dismiss, the court may determine non-infringement based on a lack of virtual identity. *See Rassamni*, 365 F. Supp. 3d at 1048–49 (finding "it is not an unreasonable extension of existing law" to address the issue of virtual identity on a motion to dismiss); *Christianson*, 149 F.2d at 203 (allowing non-infringement to be determined on a motion to dismiss when both works are before the court).

Here, whether Defendants' automobile comparisons and Plaintiff's Content are virtually identical in their selection, coordination, and arrangement of facts is a close issue. And the Court's analysis differs for each allegedly infringing automobile comparison. Accordingly, the Court first addresses the similarities between Plaintiff's comparison, titled "2019 Ford Transit Connect Van compared with the 2019 Nissan NV200" (Ex. 1), and Defendants' webpage, titled "2019 Ford Transit Connect vs 2019 Nissan NV200" (Ex. 5). Both Parties' comparisons are broken down into several sections which discuss the different features of the two cars in a manner that highlights the Ford Transit's superiority to the Nissan NV200. Although Plaintiff's comparison contains several sections which are not present in Defendants' comparison—warranty, reliability, tires and wheels, and recommendations—the remaining sections are substantively identical and arranged in

nearly the same order.  (*Compare* Ex. 1, *with* Ex. 5.)  The arrangement of information appearing in both Parties' automobile comparisons is depicted below:

| Arrangement of Information[9] | |
| --- | --- |
| **Plaintiff's Comparison** | **Defendants' Comparison** |
| Safety | Engine |
| Engine | Fuel Economy/Range |
| Fuel Economy and Range | Brake System |
| Brakes and Stopping | Suspension/Handling |
| Suspension and Handling | Steering Stability[10] |
| Chasis | Chasis Configuration |
| Passenger Space | Passenger Space |
| Cargo Capacity | Cargo Capacity |
| Payload and Towing | Payload and Towing |
| Ergonomics | Driver Convenience[11] |
| | Safety and Security |

(*Compare* Ex. 1, *with* Ex. 5.)

Substantively, each piece of factual information in Defendants' comparison also appears in Plaintiff's comparison and is presented in a markedly similar way.  When comparing the two works at issue, it is clear that numerous sentences and paragraphs are copied verbatim from Plaintiff's work, though there are a small number of sentences that demonstrate stylistic differences.  Examples of each are presented below:

---

[9]    This table does not include those sections which appear in Plaintiff's comparison but not in Defendants' comparison.

[10]    This Section of Defendants' webpage contains the same factual information as Plaintiff's "Suspension and Handling" Section.  Defendants' webpage, however, breaks this information into two Sections: "Suspension/Handling" and "Steering Stability."  (*Compare* Ex. 1, *with* Ex. 5.)

[11]    This Section of Defendants' webpage contains the same factual information as Plaintiff's "Ergonomics" Section, just with a different title.  (*Compare* Ex. 1, *with* Ex. 5.)

22-CV-1186 TWR (BLM)

| Similarities in Presentation | |
| --- | --- |
| **Plaintiff's Comparison** | **Defendants' Comparison** |
| The Transit Connect Van has standard Automatic Emergency Braking, which use forward mounted sensors to warn the driver of a possible collision ahead. If the driver doesn't react and the system determines that a collision is imminent, it automatically applies the brakes at full-force in order to reduce the force of the crash or avoid it altogether. | The Transit Connect Van has standard Automatic Emergency Braking, which use forward mounted sensors to warn the driver of a possible collision ahead. If the driver doesn't react and the system determines that a collision is imminent, it automatically applies the brakes at full-force in order to reduce the force of the crash or avoid it altogether. |
| The Transit Connect Van's drift compensation steering can automatically compensate for road conditions which would cause the vehicle to drift from side to side, helping the driver to keep the vehicle straight more easily. | The Transit Connect Van features a drift compensation steering can automatically compensate for road conditions which would cause the vehicle to drift from side to side, helping the driver to keep the vehicle centered on the road. |
| To keep a safe, consistent following distance, the transit Connect Van XLT offers and optional Adaptive Cruise Control, which alters the speed of the vehicle without driver intervention. . . . The NV200 doesn't offer an adaptive cruise control. | To maintain a safe, consistent following distance, the transit Connect Van XLT offers and optional Adaptive Cruise Control, which alters the speed of the vehicle without driver intervention. The NV200 doesn't offer an adaptive cruise control. |
| The Transit Connect Van's standard tilting steering column adjusts to different sized drivers and makes entering and exiting easier.  Nissan doesn't offer tilt steering on the NV200 | The Transit Connect Van's standard tilting steering column adjusts to different sized drivers and makes entering and exiting easier.  Nissan doesn't offer tilt steering on the NV200. |
| For superior ride and handling, the Ford Transit Connect Van has fully independent front and semi-independent rear suspensions.  An independent suspension allows the wheels to follow the road at the best angle for gripping the pavement, without compromising ride comfort. | For superior ride and handling, the Ford Transit Connect Van has fully independent front and semi-independent rear suspensions.  An independent suspension allows the wheels to follow the road at the best angle for gripping the pavement, without compromising ride comfort. |

| Differences in Presentation | |
| --- | --- |
| **Plaintiff's Comparison** | **Defendants' Comparison** |
| To help each driver find a more comfortable driving position, the Transit Connect Van has a telescoping steering wheel. Much better than just a tilt steering wheel or adjustable seat, this allows a short driver to sit further from the steering wheel while maintaining contact with the pedals. The NV200 doesn't offer a telescoping steering wheel. | In addition the Transit Connect Van has a telescoping steering wheel. The combination allows shorter drivers to sit further from the steering while maintaining contact with the pedals. The NV200 doesn't offer a telescoping steering wheel. |
| The Ford Transit Connect Van has standard four-wheel disc brakes for better stopping power and improved directional control in poor weather. Only rear drums come on the NV200. Drums can heat up and make stops longer, especially with antilock brakes that work much harder than conventional brakes. | The NV200 is fitted with only front disk brakes, with old-fashion drum brakes. Drum brakes easily heat up and make stops longer, particularly with antilock brakes which work the brakes even harder. |
| The Nissan NV200 has a solid rear axle, with a non-independent rear suspension. . . . The front and rear suspension of the Transit Connect Van uses coil springs for a better ride, handling and control than the NV200, which uses lead springs in the rear. | The Nissan NV200 has a solid rear axle, which is a non-independent rear suspension typically found in the least expensive cars on the market. The front and rear suspension of the transit Connect Van uses coil springs for a better ride, handling and control than the NV200, which uses lead springs in the rear (which date back to covered wagons). |
| [No equivalent sentence.] | Businesses large and small now have the option of several small commercial vans that can be outfitted for a variety of applications. Two of the most popular are the 2019 Ford Transit Connect [] and the Nissan NV200. While outwardly similar in size and appearance, the Ford |

| | Transit Connect offers a considerable number of advantages that make it the clear choice for your business. |
|---|---|

(*Compare* Ex. 1, *with* Ex. 5.)

Although Defendants' comparison presents a few facts in a slightly different manner and adds a small number of new sentences, these instances of originality are overwhelmingly outnumbered by those instances in which Defendants' word choices, phrasing, and arrangement of information are nearly identical to Plaintiff's. Here, "[e]ven a cursory glance at both parties' materials demonstrates that defendants substantially duplicate[d] [plaintiff's] selection and arrangement." *See Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst., LLC*, 519 F. Supp. 2d 1057, 1067 (E.D. Cal. 2007); *see also id.* (defining virtual identity as "wholesale or verbatim instances of copying in regards to plaintiffs' explicit selection and arrangement"). Ultimately, the automobile comparisons submitted by Plaintiff plausibly support the assertion that Defendants' and Plaintiff's works are virtually identical. Accordingly, the Court concludes that non-infringement cannot be determined on a motion to dismiss and **DENIES** Defendants' Motion insofar as it seeks dismissal of Plaintiff's copyright infringement claim regarding the comparison of the 2019 Ford Transit Connect and 2019 Nissan NV200.

Next the Court addresses the similarities between Plaintiff's comparisons, titled "2019 GMC Terrain compared with the 2019 Jeep Compass" (the "pro-GMC comparison") (Ex. 2) and "2019 Jeep Compass compared with the 2019 GMC Terrain" (the "pro-Jeep comparison") (Ex. 3), and Defendants' comparison, titled "See the Difference: 2019 GMC Terrain vs. 2019 Jeep Compass" (Ex. 8). This analysis is a bit more complicated because it requires the Court to determine whether Defendants' single comparison can simultaneously be virtually identical to two of Plaintiff's comparisons.

The Court begins by analyzing the overall tone in which the facts are presented in each automobile comparison. While Plaintiff's comparisons each pitch one automobile as superior to the other, Defendants' comparison takes a more neutral tone. For example,

Defendants' comparison begins by stating, "Both the 2019 GMC Terrain and the 2019 Jeep Compass are excellent choices among a broad field of compact SUVs.  While they are both similar in overall size, they have their own distinct personalities.  Here is a rundown to help you select which of these two great SUVs best fit your lifestyle . . . ."  (Ex. 8.)  Defendants' comparison alternates between the advantages of each automobile, whereas Plaintiff's pro-GMC comparison only discusses the advantages of the GMC Terrain, (*see* Ex. 2), and its pro-Jeep comparison only discusses the advantages of the Jeep Compass, (*see* Ex. 3).  Thus, there is a difference in the overall tone in which the facts are presented: Defendants' comparison is objective while Plaintiff's comparisons are persuasive.

Next, the Court turns to the arrangement of information within each automobile comparison.  All three comparisons are broken down into various sections discussing the different features of the GMC Terrain and Jeep Compass.  (*See* Exs. 2, 3, & 8.)  Plaintiff's Pro GMC comparison contains several sections which are not found in Defendants' comparison: reliability, fuel economy and range, transmission, brakes and stopping, tires and wheels, chasis, passenger space, cargo capacity, ergonomics, and recommendations. (*Compare* Ex. 2, *with* Ex. 8.)  Plaintiff's Pro Jeep comparison also contains several sections which are not found in Defendants' comparison, many of them overlapping with the categories from the Pro GMC comparison: reliability, fuel economy and range, transmission, brakes and stopping, tires and wheels, chasis, ergonomics, and economic advantage.  (*Compare* Ex. 3, *with* Ex. 8.)

Although Defendants' comparison and each of Plaintiff's comparisons still share many of the same sections, Defendants' comparison presents these sections in a different order.  The arrangement of information appearing in both Parties' automobile comparisons is depicted below:

/ / /

/ / /

/ / /

/ / /

| Arrangement of Information[12] | | |
|---|---|---|
| **Plaintiff's Pro GMC Comparison** | **Plaintiff's Pro Jeep Comparison** | **Defendants' Comparison** |
| Safety | Safety | Engine |
| Warranty | Warranty | Transmission |
| Engine | Engine | All-Wheel Drive |
| Suspension and Handling | Suspension and Handling | Suspension and Handling |
| Towing | | Towing |
| | | Warranty |
| | | Safety |

(*Compare* Exs. 2 & 3, *with* Ex. 8.)

Of the seven sections in Defendants' comparison, two do not appear in Plaintiff's comparisons: Transmission and All-Wheel Drive.  (*Compare* Exs. 2 & 3, *with* Ex. 8.) These sections, which contain entirely new factual information, are excerpted below:

Transmission

Both the 2019 Jeep Compass and the 2019 GMC Terrain both offer automatic transmissions.  However, only the Compass also offers a manual transmission, which can be an advantage to drivers who want to take their vehicles off-road.

All-Wheel Drive

Front-wheel drive is standard on the GMC Terrain, and all-wheel drive is available with a knob to engage the part-time system.  Being a Jeep means you have true AWD capabilities, it offers the available Jeep Active Drive, Selec-Terrain Traction Management System with settings for Auto, Snow, Sand, Mud or Rock, as well as a 4WD Low setting for slow crawling on rocks or in mud.

/ / /

---

[12]   This table does not include those sections which appear in Plaintiff's comparisons but not in Defendants' comparison.

22-CV-1186 TWR (BLM)

(Ex. 8.)  The new information in Defendants' comparison comprises approximately one quarter of the total information in its work.  (*See id.*)  The significant amount of new information in Defendants' comparison inhibits a finding that Plaintiff's comparisons and Defendants' comparison are virtually identical.

Moreover, although certain sentences in Defendants' comparison are identical to or paraphrased from various sentences in each of Plaintiff's comparisons, the presentation of information in Defendants' comparison is, as a whole, very different.  When a work is entitled to "thin" protection, courts generally look at each work in its entirety to determine whether the overall selection, arrangement, and coordination of facts is virtually identical. *See Satava*, 323 F.3d at 812; *see also United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) ("Trivial elements of compilation and arrangement, of course, are not copyrightable since they fall below the threshold of originality.").  Here, a side-by-side comparison of Defendants' and Plaintiff's works indicates that Defendants have selected more facts to include and have arranged those facts differently.  *See Feist*, 499 U.S. at 349–50 (allowing copying of facts if the arrangement and selection is not identical); *Landsberg*, 736 F.2d at 489 (allowing similarity between compilations absent duplicative selection, coordination, and arrangement).

Take the Warranty Information section, for example.  (*Compare* Exs. 2 & 3, *with* Ex. 8.)  The Warranty Information sections of each automobile comparison are depicted below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| Warranty Information | | |
| --- | --- | --- |
| **Plaintiff's Pro-GMC Comparison** | **Plaintiff's Pro-Jeep Comparison** | **Defendants' Comparison** |
| The Terrain's corrosion warranty is 1 year longer than the Compass' (6 vs. 5 years). <br><br> GMC pays for the first scheduled maintenance on the Terrain. GMC will pay for the first oil change, lubrication and any other required maintenance for the first year. Jeep doesn't pay scheduled maintenance for the Compass. | The Compass' corrosion warranty is unlimited miles longer than the Terrain's (unlimited vs. 100,000 miles). <br><br> There are over 37 percent more jeep dealers than there are GMC dealers, which makes it easier should you ever need service under the Compass' warranty. | The Terrain's corrosion warranty is 1 year longer than the Compass' (6 years vs. 5 years). In addition, GMC pays for scheduled maintenance on the Terrain for two years or 24,000 miles. GMC will pay for oil changes, lubrication and any other required maintenance (up to two oil changes). Jeep doesn't pay for scheduled maintenance for the Compass. The Compass' corrosion warranty is longer than the Terrain's (unlimited vs. 100,000 miles). |

(*Compare* Exs. 2 & 3, *with* Ex. 8.)  Defendants' section duplicates or paraphrases a few sentences from Plaintiff's pro-GMC comparison and a few sentences from Plaintiff's pro-Jeep comparison.  Still, Defendants chose to include more facts in their comparison than Plaintiff chose to include in either of its own.  And while Plaintiff only included facts highlighting one automobile, Defendants included facts advantageous to both.  Moreover, Defendants arranged those facts differently and supplemented their section with new information.  Ultimately, the overall selection, coordination, and arrangement of facts in Defendants' Warranty Information section cannot be considered virtually identical to the Warranty Information section in either the pro-Jeep comparison or the pro-GMC comparison.  These differences in selection, coordination, and arrangement extend to the automobile comparisons as a whole, as evidenced by the new sections in Defendants'

22-CV-1186 TWR (BLM)

comparison, Defendants' inclusion of more information in those sections that overlap with Plaintiff's sections, and Defendants' neutral, rather than persuasive, tone.  In light of the foregoing, the Court concludes that non-infringement can be determined on a motion to dismiss and **GRANTS** Defendants' Motion insofar as it seeks dismissal of the copyright infringement claim regarding the 2019 GMC Terrain and 2019 Jeep Compass.

## II.     Digital Millenium Copyright Act §§ 1202, 1203

Plaintiff claims Defendants violated Sections 1202 and 1203[13] of the DMCA because they "removed or altered all copyright management information from the Content before distributing infringing copies of the Content.  This copyright management information included copyright notices and attribution[s] identifying Advanta-STAR as the owner of the comparisons."  (FAC ¶ 47.)  At the motion hearing, all Parties agreed that only Section 1202(b) is at issue in this case.  (*See* ECF No. 32; *cf.* FAC ¶¶ 47–50; Mot. at 14.)  The Parties also agreed that Plaintiff's 1202(b) claim does not apply to South Bay Ford.  (*See* ECF No. 32.)  Accordingly, the Court **GRANTS** Defendants' Motion insofar as it seeks dismissal of the DMCA claim against Defendant South Bay Ford.

The remaining issue is whether Plaintiff has stated a DMCA claim against the Search Optics Defendants.  To state a claim for a violation of Section 1202(b), Advanta-STAR must plausibly allege that Search Optics (1) removed or altered copyright management information or distributed or imported for distribution a work from which the copyright management information had been removed or altered, and (2) acted with the requisite mental state (intent for 1202(b)(1) and knowledge for 1202(b)(2) and (b)(3)).  *See* 17 U.S.C. § 1202; *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (requiring a plaintiff to demonstrate a "past pattern of conduct or modus operandi" to establish the requisite mental state); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 938 (C.D. Cal. 2018).

---

[13]     Section 1203 provides for civil remedies for any violation of Section 1202.  Thus, this Order will address only the elements of Section 1202.

22-CV-1186 TWR (BLM)

Search Optics challenges Plaintiff's DMCA claim on multiple grounds, arguing: (1) Plaintiff cannot bring a DMCA claim if it fails to state a claim for copyright infringement, (Mot. at 17); (2) Plaintiff fails to allege that Defendants "made identical copies of the plaintiff's work and then removed the copyright management information from that work," (*id.* at 15); and (3) "Plaintiff does not plead any facts that would plausibly establish that Defendants acted with the intent" required, (*id.*).

First, Search Optics asserts that "because Plaintiff has failed to state a claim for copyright infringement, it cannot maintain a claim under Section 1202 based on that same alleged infringement." (*See* Mot. at 17.)  For support, Defendants cite *Storage Technology Corporation v. Custom Hardware Engineering & Consulting, Inc.*, 421 F.3d 1307 (Fed. Cir. 2005), a Federal Circuit Court case which held that "courts generally have found a violation of the DMCA only when the alleged access was intertwined with a right protected by the Copyright Act." *See id.* at 1318.  Indeed, Section 1202(b) only prohibits the removal or alteration of copyright management information when the defendant knows or should know that its actions will "induce, enable, facilitate, or conceal an infringement of any right under [Title 17]." *See* 17 U.S.C. § 1202(b).

According to Plaintiff, Search Optics engaged in prohibited conduct by distributing its automobile comparisons to South Bay Ford and Essig Motors "with the knowledge that such distribution would facilitate the dealerships' infringement." (*See* Opp'n at 21.)  But the Court has already found that one of the automobile comparisons distributed by Search Optics—the comparison of the 2019 GMC Terrain and 2019 Jeep Compass, which was found on Essig Motors' website—did not infringe on either of Plaintiff's comparisons of the same vehicles.  *See supra* Section I.B.  Thus, "[t]o the extent that [Search Optics'] activities do not constitute copyright infringement or facilitate copyright infringement, [Advanta-STAR] is foreclosed from maintaining an action under the DMCA." *See Storage Tech. Corp.*, 421 F.3d at 1318.  Accordingly, Plaintiff's DMCA claim may only be premised upon Search Optics' distribution of the 2019 Ford Transit Connect and 2019 Nissan NV200 comparison to South Bay Ford.

With this in mind, the Court turns to Defendants' remaining arguments for dismissal. Defendants assert that Plaintiff has not and cannot allege that Search Optics made "identical" copies of its work as required for a DMCA claim. (*See* Mot. at 15.) In response, Plaintiff asserts that "Defendants have not cited any controlling case law on this point." (Opp'n at 21.) Plaintiff is correct. The one reported case cited by Defendants does not stand for the proposition that exact identity is required. *See Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd and rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003). However, other courts have applied the identical work standard urged upon the Court by Defendants: "Courts have held that 'no DMCA violation exists where the works are not identical.'" *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (citing *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (collecting cases)). The Court finds the reasoning of those cases to be persuasive. Although Plaintiff has plausibly alleged that Defendants may be liable for "copy[ing] protected aspects of [Plaintiff]'s expression," *see Malibu Textiles, Inc.*, 922 F.3d at 951, Plaintiff has not plausibly alleged that Defendants distributed identical copies of Plaintiff's comparison, *see* 17 U.S.C. § 1202(b)(3). Accordingly, Plaintiff fails to state a claim for a violation of Section 1202 of the DMCA.

Although Plaintiff's DMCA claim fails for this reason alone, the Court addresses Defendants' final argument in the interest of thorough adjudication. Defendants argue Plaintiff has failed to plead that Search Optics "knew or had a reasonable basis to know that the removal or alteration of [copyright management information] or the distribution of [w]orks with [copyright management information] removed w[ould] aid infringement." (*See* Mot. at 16–17 (citing *Harrington v. Pinterest, Inc.*, No. 5:20-cv-05290-EJD, 2022 U.S. Dist. LEXIS 168788, at *14–15 (N.D. Cal. Sept. 19, 2022); *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018)).) Furthermore, Defendants argue, Plaintiff has failed to "make an affirmative showing, such as by demonstrating a past pattern of conduct or modus operandi, that the defendant was aware or had reasonable grounds to be aware of

the probable future impact of its actions." (*Id*. at 17 (internal quotations omitted) (quoting *Stevens,* 899 F.3d at 674).)

As for the Search Optics Defendants, the knowledge requirement has clearly been satisfied.  Plaintiff's First Amended Complaint alleges that "Defendants intentionally removed copyright management information and distributed . . . copies of the Content knowing that copyright management information had been removed or altered."  (FAC ¶ 50.)  Moreover, Plaintiff claims "Defendants committed the above acts while knowing, or having reasonable grounds to know, that their effects would induce, enable, facilitate, or conceal an infringement of Advanta-STAR's rights in the work." (*Id*. ¶ 52.)  Plaintiff's conclusions are supported by factual allegations in the First Amended Complaint.  Specifically, Plaintiff identifies two prior instances in which Search Optics admitted that it "reproduced and distributed to its customers some of Advanta-STAR's copyrighted content" without authorization. (*Id*. ¶¶ 15–20.)  Therefore, Plaintiff has sufficiently alleged that Search Optics demonstrated "a pattern of conduct by infringing Advanta-STAR's copyright-protected work over the last ten years." (*Id*. ¶ 51.)

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claim for violation of Sections 1202 and 1203 of the DMCA.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

In sum, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss Plaintiff's copyright infringement claim. Specifically, the Court **GRANTS** the Motion insofar as it seeks dismissal of the infringement claim based on the comparison of the 2019 Jeep Compass and 2019 GMC Terrain but **DENIES** the Motion insofar as it seeks dismissal of the claim based on the comparison of the 2019 Ford Transit Connect and 2019 Nissan NV200. Additionally, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's DMCA claims. Because Plaintiff cannot cure the deficiencies in the dismissed claims through amended pleading, the Court finds that leave to amend would be futile. Thus, the Court **DISMISSES WITH PREJUDICE** the aforementioned copyright infringement claim and the DMCA claims.

**IT IS SO ORDERED.**

Dated:  May 9, 2023

_____

Honorable Todd W. Robinson
United States District Judge

22-CV-1186 TWR (BLM)